Good morning, Your Honor. My name is Herb Santos, Jr. I have the honor of representing Ken Perkle in this matter. I would ask the Court if I could reserve four minutes for rebuttal. May it please the Court, Counsel, ladies and gentlemen. In order for an insurer to validly limit insurance coverage, in this case uninsured motorist coverage and MedPay benefits, three requirements must be met in the State of Nevada. The clarity requirement, the prominence requirement, and the requirement prohibiting double premiums. In the present matter, benefits which are in dispute are the MedPay benefits and the uninsured motorist benefits. I would ask the Court to review ER-448, which is the MedPay provision in the subject policy. Nowhere in that policy is it prominently displayed any anti-stacking language. There is another part of the policy, found at ER-88, which talks about Nevada changes. No anti-stacking language for any of the MedPay benefits are located in that component. Based upon the fact that it does not meet the prominence requirement, the MedPay is stackable. However, the lower court failed to adequately address this in its decision. Next as to the UM coverage. It's our position that the lower court erred when it found that the clarity requirement was met. Our Nevada Supreme Court has consistently held that the anti-stacking clause must not only be unambiguous, but also must not be difficult to understand. Well, counsel, what is hard to understand about the sentence particularly that says that the maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle? Why isn't that easy to understand? Well, the problem with that, Your Honor, is that, for one, the Nevada Supreme Court in Taurus gives the example of what the court needs to address when evaluating whether or not the language is easy to understand. The language itself fails to specify that the total UM coverage is limited to the coverage of any single vehicle. It does not state in simple terms that the insurer will not pay more than the limit of coverage for that particular auto as the language which was approved by the Nevada Supreme Court in Koteny. It does not express the need for that. Why isn't it clear when it says we won't pay more than for one vehicle? What's unclear about one vehicle? Well, what the Nevada Supreme Court will do is they will look at the entire policy. And when you look at the other components under the Nevada uninsured endorsement on this particular policy, there's conflicting language throughout it. On the first page where it has the anti-stacking language commencement of policy, it says we will pay all sums the insured is legally entitled to recover as damages from the owner or driver of uninsured motor vehicle. It also says that the amount that will be paid is the limit of insurance for UM coverage shown in the schedule or declarations. When you go to the declarations section at ER 72, that confirms that the UM coverage is for the covered autos. That list of covered autos is 32 vehicles with UM coverage of $1 million each and MedPay of $10,000 each. So when you look at all of the factors within that policy, a average insurer is going to question whether or not one provision is applying when it conflicts with the other provision. That's saying that there's not this provision we're talking about with the language the maximum recovery highlighted. It's in larger type. It's very prominent in the policy. Well, Your Honor, the Nevada Supreme Court has addressed the prominency requirement. And basically in the Newman case, the Nevada Supreme Court basically said that when you have numerous areas, if you look at that page on the uninsured motors coverage regarding the prominence, there's a section regarding exclusions, which is different than limitations of liability. And the Nevada Supreme Court said that when you're looking at the prominence requirement, it has to direct the reader's attention to that specific provision of the policy. In the Newman case, there was multiple bold headings that directed the reader's attention away from the anti-stacking language. And they said by doing that, that effectively rendered the prominence inadequate. The area where it does have the large, when you look at that policy, there's not only large, bold print regarding exclusion, but there's various bold headings throughout there. Who isn't insured? Exclusions. Other insurance. Duties in the event of an accident, claim, suit, or loss. Transfer of rights of recovery against others to us. Arbitration. Counsel, the rule doesn't require that nothing else in the policy be made prominent. As long as this part is prominent, there can also be other prominent parts. Well, and that, the Nevada Supreme Court did address that and said that the anti-stacking language must be prominent as opposed to any other part of that policy. So when you have an area where you've got bold, capped letters regarding exclusions of coverage, the Nevada Supreme Court would hold in that situation that the reader is directed to two different areas. What other insurance companies do, and this was set forth in the affidavit of the plaintiff's expert, Thomas Corden, was that they will either place it in a box, setting it apart from the rest of the policy so it directs the reader's attention to that specific part of the policy. In the Newman case, because they had the ---- Nevada Supreme Court has not specifically required that there be a box or any particular format as long as the three general criteria are met, correct? That's correct. But what the Supreme Court has said is that the insurance company, who is the drafter of the insurance policy, has to do something more to set it apart from the rest of the policy. Mr. Santos? Yes, sir. Do we review the determination by the district court de novo, or is it clearly erroneous with regard to the district court's finding of fact on questions such as prominence? I'm sorry. Could you please repeat that? What's the standard of review? Are we reviewing de novo? We look at the language for ourselves and decide whether, as a matter of law, in light of all of these Nevada Supreme Court cases, this case falls in this box or that box, or do we review the question determined by the district court as a matter of fact, overturning it only if we declare that it's clearly erroneous? I believe that the court would look at this de novo. Is it a mixed question of law and fact? It is a mixed question. In fact, if you look at the pretrial document that was submitted by both parties, the issues regarding the clarity, prominence, and double premium were all listed as areas that were questions of fact to be determined. So then we would review those under a clearly erroneous standard, would we not? I'm not sure, Your Honor. It's either one way or the other, Mr. Santos. I believe that the standard of review is to look at this decision to see whether or not it's supported by appropriate Nevada law using the same analysis that the Nevada Supreme Court does when they evaluate lower court decisions regarding the three factors of 687B.145. Assuming the facts as found by the district court with regard to prominence and the other statutory factors? Yes. Okay. If I may go back to the prominence. When you look at the Newman case, Your Honor, the Newman case, there were these other areas that directed the reader's attention away from the anti-stacking language, and the court found that because it directs you away from and not directly to it, that the prominence required had not been met. There's also the failure of the insurance company to following the prohibition against double premiums. In this case, there was no discount given for the multi-vehicles. In fact, the respondent admitted that the insurer did not receive multi-vehicle discounts as they do not offer any multi-vehicle discounts on its policies, which is found in ER-318. When you look at the policy itself, there's separated state amounts of insurance for each vehicle. The respondent states that the premium was determined for each vehicle. Each vehicle had the UIM coverage of $1 million and $10,000 in MedPay, and each vehicle was charged the same premium. Again, the testimony or the affidavit of the plaintiff's expert, Thomas Corrigan, confirmed that based upon his analysis of that, that there was basically a separate premium was charged for each one of those. The district courts strike that part of Mr. Corrigan's declaration by sustaining an objection that it lacked foundation in terms of underwriting information as to how the premium was computed? With the — with the — there was no specific order that was given by the court in their decision. They did characterize it as him not having sufficient foundation to make that — make that determination. However — Is that an evidentiary ruling? Yes, it is, Your Honor. The next issue is whether or not Mr. Perkle is a Class I insured. The respondent admitted that nowhere in his policy does it classify or define a Class I or Class II insured. Essentially what the insurance company did was they insured a corporation, a corporation that cannot suffer any type of injury, a corporation that cannot have a family member. Throughout the pleadings, throughout everything in this case, their position has been the name insured was the corporation. So the Beeney case is the case that gives us guidance on what do we do in those situations. In the Beeney case, the situation was whether or not a guest passenger could stack U.M. coverage. There was two — Justice, let me quickly ask you one question about your second issue. If we were to disagree with you on the first issue, would we ever have to reach the second issue at all, or would that be the end of the case? Regarding the — regarding the requirements of following — Yes. If you found that all three requirements have been met, then — We'd never reach issue two. Well, as to the MedPay, not as to the — I'm sorry, as to the uninsured motorist coverage, not as to the MedPay. Because the MedPay, there was no promptly displayed anti-stacking language. That's clear on its face. Okay. I see that my four minutes are up, and I'd like to reserve that for rebuttal. You may do that.  Good morning, Your Honors. My name is Larry Panik. I represent the appellee NEICC. I'm also here today joined by co-counsel Philip Tiberi, who also represents NEICC. What we would like to do, if possible, is I would like to address the statutory issues, the three requirements that Mr. Santos just talked about. Mr. Tiberi would like to, with your court's permission, address the class one versus class two issue under the Beeney case in Nevada. I'd like to begin by — Which one of you is going to respond to question two? Question, in terms of the issue on the class one, class two distinction, that would be Mr. Tiberi. Thank you. In the briefs and as well as this morning, there has been some discussion about the burden of proof and what law applies and who has the responsibility of doing what. This case involves, I believe correctly, a mixed question of fact and of law. Clearly, with respect to the questions of law, it would be a de novo review, but there were questions of fact decided, meaning the prominence and as well as the evidence relating to the premium calculations and the evidence supporting those premium calculations. And so clearly that review, the standard would be different. It would be a clearly erroneous standard. And the district court's decision, the order submitted by the district court, very adequately, I believe, summarizes the evidentiary issues. And I'll address those as I proceed. Counsel, as you do so, Mr. Santos made a clear distinction in his argument between the medical payment sections of the policy or coverage in the policy and the U.M., U.I.M. piece. Would you address specifically whether, in your view, those should be treated differently and why your answer is what it is? Well, I don't think they're treated differently. Yes, I'd be happy to address that, Your Honor. I don't think they're treated differently with respect to the legal analysis, and this is why. Mr. Santos asserted that the policy contains no language or limiting anti-stacking language with respect to the med payments, and I think that's inaccurate. In the record at referencing page ER-89 and ER-90, at the very bottom of the second column on ER-89, it starts saying that the limit of insurance provision in the auto medical payments coverage is replaced by the following. And then it flips over to the next page at the beginning, and it talks about the limit of insurance, subsection D. And that language is identical to the limit of insurance language, which is included in the U.M. amendment, or endorsement, rather, for the policy, meaning that to the extent that this Court concludes that the language on the uninsured motorist provision is clear and prominent, this language would also be clear and prominent. It suffers none of the defects that Mr. Santos has referred to in some of the other Nevada appellate decisions. It includes the same language limiting, and this is true for both forms now, limiting or stating that regardless of the number of autos, insureds, premiums paid, claims made, or vehicles involved in the accident, the most they will pay is the limit of auto medical payments shown in the declarations, which is $10,000. So the language is fundamentally the same. The only difference is that it refers to the auto medical payments as opposed to the uninsured motorist coverage. And as Your Honors know from the record, those amounts have already been paid. The ---- This is a factual question that I probably should know the answer to, but I don't. Are the remaining claims against both parts of the policy, in other words, are there remaining medical payments claims as well as ---- Is my question clear? I believe so, Your Honor. So they're both in play. The record is not clear on that issue in the sense that the summary judgments, the counter judgments which were decided by the district court sort of preempted any further discovery. It's probably a safe assumption that there are significant additional medical expenses that are out there that were not compensated under this policy. I cannot speak and the record does not speak to whether those medical expenses have been paid by some other source. I don't know. What is clear is that upon review of the claim, NEICC paid what they believed was the complete limit under the policy, the $1 million on the U.M. claim and then the $10,000 on the auto medical payments claim for a total of $1,010,000. So that payment was made and then the question became is Mr. Perkle able to stack these coverages or claim stacking under the Tedford policy? And the court below, of course, concluded that because the language was clear and prominent and that there was no premium paid for this additional coverage, that stacking was not allowed under Nevada law. Was Mr. Perkle on the employer's clock at the time the accident occurred? He may have been. It appears that he was probably driving back, but he had use of the vehicle. I mean, we're not contesting that he was able to use the vehicle for personal use as well. So he would have been, as long as he was in the vehicle and occupying the vehicle, he would have been falling, he would have fallen within the coverage under the U.N. provision. Well, my question really was whether or not he would have been entitled to workers' compensation benefits. I believe he is entitled to workers' compensation benefits, but again, Your Honor, that record is not clear. I mean, just to be fair. I mean, it just doesn't speak to that. We didn't get into that discovery because we believed, as the district court agreed with us, that we didn't have responsibility beyond what we had already paid. Just to address for a couple of moments, if I could, a couple of issues that Mr. Santos raised. As I'm sure you would expect, we believe that the language is very clear and is not confusing at all. The cases in Nevada have made it clear that there are no magic formula for this language, that as long as you clearly state what the purpose and effect of this anti-stacking language is, that it's enforceable. And in fact, in the Bove decision, it found that the court found language that's almost identical to the language in our policy to be acceptable. The Bove case sent it back down, but not for that reason. And they said that Sarat also found the language to be very similar to our language to be acceptable. And I think there's little question that — and in fact, in the Bove decision, it's interesting because the court reviews this language and says something to the effect that it's difficult to imagine how this language could be much clearer if you're trying to tell an insured that they are going to receive but a single limit for uninsured motorist claims. And of course, this is the same language that is found in the medical payment coverage provision. With respect to the Prominence decision, I think there's some, ironically, confusion about the application of the Newman decision. In Newman, the court was faced with a policy that was in double-spaced format. And the original policy did not have anti-stacking language. So the insurer then issued an amendment to the policy which included this anti-stacking language, except that the problem the court found in Newman is that this amendment was in exactly the same format, double-spaced and not all caps. It wasn't bolded. It was simply the same format. So — and additionally, the other problem that they found in Newman was that the numbering or the outlined format that was used in the amendment did not correlate with the outlined format that had been used in the policy. In other words, it looked sort of like you may have had an amendment for the wrong policy. So the court looked at that and said, well, this isn't sufficiently prominent at all because an insured could reasonably look at this and conclude it doesn't even apply to my policy. Moreover, the anti-stacking language itself wasn't bolded or highlighted in any way. There was no box. There was no bolding. There was no capitalization. And so the Newman court said this is simply inadequate in order to inform the insured and alert them to the fact that this — that this language exists and the effect it might have. In the cases, it's not required that this language be presented in a particular way. It just has to be presented in some way to draw the insured's attention to the issue. And in the Bove and the Serrett decisions, they were presented with language or a formatted language where the language was capitalized and bolded. And the courts concluded that it was sufficiently prominent. And, in fact, those decisions address a couple of the points that the appellants make in their brief. They say first that it doesn't have to be on the same page. In other words, you can have the language on a couple of pages. As the Bove court says, the issue is one of prominence and not immediacy. So you don't have to read it the first thing. You just have to be able to see that it stands out somewhere. And they also said that the fact that you have more than one area of the policy highlighted does not diminish the adequacy of the prominence, meaning that if there are multiple clauses that have been capitalized or bolded, that's okay as long as you've taken the effort and have allowed the insured to realize that there is some — something unusual or something different about this language they need to pay attention to. And in this policy, in our policy, there are a couple of things that do this. First, under the coverage form, and this is true in the Nevada changes, which refers to the — I'm referring to the medical payment provision. It's also true in the U.M. form. Both places the policy does this. There's language which says that the anti-stacking provisions are bolded and highlighted and capitalized. So they inform the insured that as you read this policy, suddenly there's a paragraph that's capitalized and bolded, and the reason it's there is because it's anti-stacking. Okay? And then when you go through the policy, you come across these several places where the limits of insurance are indeed capitalized and bolded, and the reason they do that as the policy has already informed the insured is to make it clear and prominent that that — that that language has an import. Counsel, you may want to let your colleague argue. That's a very good point. I will do that. Let me just close by saying this, Your Honor. It's exciting to be here. It's a pleasure to be here, so I get carried away. Let me just — let me just do this, Your Honor. On the third issue, I just want to address that briefly. There is an evidentiary question. There was no objection to the evidence we presented at the trial level. The district court believed the evidence and found that it was persuasive and that it was adequate and complete in demonstrating that there was no premium paid beyond a coverage of $1 million per vehicle per accident, which is exactly what the policy says, it's what the underwriting materials say, and it's what Mr. Grant says. And the court in declaration was discounted by the district court, as set forth in the order, and therefore should not be considered at this level because the record is simply absent of any objection or any contrary evidence. And on this record, I believe that on that issue alone, we — it should be affirmed. I will now yield the remainder of the time to Mr. Tiberi. Thank you, Your Honor. Thank you. May it please the Court, good morning. I'm here to address the distinction of the Class I versus Class II insured. We believe that the lower court properly concluded that the appellant in this matter was a Class II insured. The reliance upon that starts with the case of Beeney, and although Beeney talked about an occupant, it also spoke about permissive use and cited to a long line of cases starting back in 1972 to the Cunningham case, where they specifically indicated that in cases such as this, where you have a fleet policy or coverage by employers such as Jack and Tedford here, that an employee in no situation would be Class II. How did they determine that? Well, they relied on several factors, many of which are present in this case. The first fact is the appellant is not the named insured on the policy. He did not pay any of the premiums on the policy. He did not negotiate or bargain for any of the terms of the insurance contract. He didn't have any right to modify or cancel the contract, nor did he have any statutory right to accept or reject the coverage for U.M. or medical payment benefits. The reason the Beeney case is important is because it specifically delineates between a Class I, a person who has the contract, who has a reasonable expectation to have the contract honored, and they are tied to, no matter what vehicle they're in, it's personal in nature, whereas an employee such as the appellant, just like in many cases with Cunningham, I believe Linderer, many of those line of cases that were cited within the Beeney case cite to the fact that the person is only covered because they're an occupant or a permissive user. That's what demonstrates them or makes them a Class II. They're not saying they're not insured. They're just saying they're only insured for purposes of this one vehicle, but they would not have any broad coverage. Sotomayor, if the district – if we were to find that the district court was correct in concluding that the insurance policy has a valid and enforceable anti-stacking provision, do we have to address the second question on the Class II and so forth? Honestly, I believe you would not have to, Your Honor. And it's – but it is interesting to note that in the minority of States that were looking at the Federal Service Council as being supportive of stacking, they specifically said that in fleet policy situations such as Pennsylvania, I believe Rhode Island, and even Mississippi, said we won't allow it in a fleet coverage situation. And the basis for that is simple. The rationale is simple public policy. They don't want to rewrite insurance contracts every time an incident were to occur. If we were to take appellant's argument to its logical conclusion, they would simply say, reinsert the name of an employee of the named insured, and you would distort the contract. But more importantly, in this specific situation, with 32 vehicles and a million-dollar liability limit for U.M. coverage, you would be asking for exponential coverage just short – or just north of 24 million past $1 billion for a $3,520 premium. And the courts have consistently held, whether it was in Cunningham, whether it was in Whitman, which is a recent Oklahoma Supreme Court case which follows the Cunningham position, that that's not what the parties bargained for. That's not the risk that they anticipated. And if you were to do that, it would expose insureds or insurers such as National American Insurance Company of California to a risk that was not contemplated and would not be fair, and such a decision would send shockwaves through a legal community. And it's important that the consistent application be followed through the line of cases of Cunningham up to the present. And we believe that public policy should dictate in this case that to ask the insured to go beyond what they contracted for is clearly irrelevant, due to the fact that we also believe the underwriting risk was calculated on the assumption that there would be multiple vehicles on the road being driven by many different employees. But the fact that Mr. Perkle might drive different vehicles in the fleet does not make him a Class I insured. It does not make him a Class I insured. And the premium or the affidavit addressed that. And we would just ask that the decision of the lower court be affirmed. I see that my time is up. Thank you very much. Thank you, counsel. Mr. Santos, you have rebuttal time. Thank you, Your Honor. I would submit, Your Honor, that this policy, there's no – if you follow their reasoning, there's no Class I insured because a corporation cannot suffer a personal injury. If there's no – they've written a policy where the Class I is a corporation. So what happens in that situation? There has to be a Class I insured. There has to be. So you look at the policy – Why does there have to be? Because there has – because the courts are going to look at – the Nevada Supreme Court has said that when you're looking at the relationship of the person that is receiving the coverage, are they going to have a relationship to that contract? Or are they someone who's just because they were an occupant inside, like in the Beanie case, just an occupant inside the vehicle? It's interesting to note in a footnote in footnote number six in the Beanie case, it talks about – the Nevada Supreme Court says that the only – the principles involved in fleet cases are the same as in this case. The only difference is that the number of vehicles involved is greater. So there's no distinction between a fleet policy and a personal policy. But what we're looking – the Nevada Supreme Court said was that the decision is in part based on express provisions of the contract. So you have a situation here when you look at the insurance contract that the name insured is listed as a corporation. On the same part of the policy, then it goes on and it lists the drivers that are listed as insured under that policy. In fact, their underwriting – their underwriting paperwork that's part of the – part of the record specifically says that all drivers must be endorsed on the policy. So when you look on the declaration where it lists the drivers, you've got the namesake of the company, Jack Tedford. The third name is Mr. Perkle. Further on down the – But the fact that they're listed as endorsed on the policy doesn't answer the question whether they're Class I or Class II. That just makes them insureds, doesn't it? Well, I think the corporation – if the corporation's insured, the corporation acts by and through its employees. And so this – the way they wrote – That's not the question I'm asking. I mean, the fact that the practice in the industry is to ask for a listing of all of the people who might be insured under the policy doesn't necessarily answer the question as to whether they're Class I or Class II insured. It depends on how the term insured is defined in the policy, correct? That's correct, Your Honor. But – So in an individual policy, if the insured means you and your children, then the courts say that all of those people might be Class I insureds, but guests might be Class II. That's correct. Okay. And so the question here is whether or not employees are more like guests or more like children in a fleet policy. Well, I think it goes one step further because the way this policy was underwritten, all of the driving records of each of these employees had to be considered. There were some employees that the insurance company completely said they weren't going to insure. Mr. Perkle, the evidence is unrebutted that he would have to submit not only his driving record where they would get his – where they would get information regarding his driving record. I don't mean to redundant, but also they would look at other factors regarding whether or not they were going to insure, whether or not they were in accidents, et cetera, whether or not they even were able to have the medical ability to apply for various types of licenses to drive some of those vehicles. So all the people on that policy had to submit information to the insurer, and it was a question whether or not they would be insured or they wouldn't be insured. The – and perhaps since Nevada has not ruled on this, that's a question that, you know, one of the things we would ask that the court has questions about, that they certify that to the Nevada Supreme Court to get that finding of whether or not we have a situation that an insurance company writes a policy that has employees on a fleet policy, whether or not those employees would be considered a Class I or Class II. Thank you. Thank you, counsel. The case just argued is submitted, and we appreciate the arguments of all of you.
judges: O'connor, Graber, Tallman